809 So.2d 95 (2002)
J. SOURINI PAINTING, INC.; James R. Sourini; Capitol Indemnity Corporation; Centex Rooney Construction Company, Inc.; Seaboard Surety Company; St. Paul Fire & Marine Insurance Company; and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Appellants/Cross Appellees,
v.
JOHNSON PAINTS, INC., Appellee/Cross-Appellant.
Nos. 2D00-1660, 2D00-1717, 2D00-3029.
District Court of Appeal of Florida, Second District.
February 27, 2002.
*96 C. David Harper of Foley & Lardner, Tampa, for Appellants/Cross-Appellees J. Sourini Painting, Inc., James R. Sourini, and Capitol Indemnity Corporation.
William C. Davell of May, Meacham & Davell, P.A., Fort Lauderdale, for Appellants/Cross-Appellees Centex Rooney Construction Company, Seaboard Surety Company, St. Paul Fire & Marine Insurance Company, and National Union Fire Insurance Company.
Herbert O. Brock, Jr., Michael R. Whitt, and J. Kevin Miller of Becker & Poliakoff, P.A., Fort Myers, for Appellee/Cross-Appellant.
SCHEB, JOHN M., Senior Judge.
On review of this appeal and cross-appeal, we conclude that the trial court's findings and legal conclusions are contradictory and cannot be reconciled. Therefore, we vacate the final judgment and postjudgment order and remand for a new trial on all issues.

Background and Litigation in Circuit Court
On December 23, 1993, Centex Rooney Construction Co., a general contractor, subcontracted with J. Sourini Painting, Inc., a painting subcontractor, to paint and waterproof the Brittany, a 22-story condominium project. The developer required J. Sourini Painting to purchase all paint and related materials from Johnson Paints, Inc. Johnson Paints began furnishing painting materials in 1994, but as work progressed, a dispute arose in 1995 concerning *97 Johnson Paints' issuance of a warranty. Centex Rooney then ceased making payments to J. Sourini Painting, who in turn ceased making payments to Johnson Paints.
On February 5, 1996, Johnson Paints filed suit against J. Sourini Painting alleging breach of contract, open account, account stated, and implied contract, claiming it had not been paid for paint materials it had supplied for the project. Johnson Paints sought to recover the cost of those materials, interest, and attorney's fees. Johnson Paints joined James R. Sourini, a guarantor of a credit agreement, and filed separate counts seeking damages, interest, and attorney's fees against J. Sourini Painting's surety (Capitol Indemnity Corporation) and against Centex Rooney and its sureties (Seaboard Surety Company, St. Paul Fire & Marine Insurance Company, and National Union Fire Insurance Company). The sureties had furnished construction payment bonds pursuant to section 713.23, Florida Statutes (1993).
The Sourini parties asserted defensively that Johnson Paints breached its contractual obligation by demanding that certain caulking be performed before it would issue a warranty. They also claimed a setoff against Johnson Paints' claim, counterclaimed for breach of express and implied warranties as to the materials furnished, and sought indemnity. Centex Rooney and its sureties asserted similar defenses and, in addition, alleged release, waiver, and estoppel. Centex Rooney and its sureties filed a cross-claim against the Sourini parties for indemnity and included a count directed against the performance bond furnished by J. Sourini Painting and Capitol Indemnity.
Some three and one-half years after this action was filed, this protracted litigation came on for nonjury trial on July 20-22 and October 13, 1999. In its final judgment entered March 9, 2000, the trial court found that "Johnson Paints breached its contract by first demanding caulking, which resulted in non-payment, which resulted in this lawsuit. Therefore, Johnson Paints is not the prevailing party."
The court, nevertheless, awarded Johnson Paints $86,320.53 against the Sourini parties, Centex Rooney, and their respective sureties. The award represented the amount Johnson Paints claimed, except for prejudgment interest, which the court denied. The court directed Johnson Paints to issue the warranty in controversy in exchange for the payment awarded. Finally, the court did not award any setoff for Johnson Paints' breach, rejected J. Sourini Painting's counterclaim, and reserved jurisdiction to enter further orders, including orders awarding costs and attorney's fees. The court also reserved jurisdiction over the cross-claims, which by stipulation were not tried.
A few months after entering the final judgment, the trial court considered motions filed by the Sourini parties, Centex Rooney, and their respective sureties seeking to recover attorney's fees and costs on the ground that they prevailed in the litigation. The court did not rule on these motions; but contrary to the final judgment, it entered an order on June 8, 2000, stating, "the entire cause of this long and `painful' lawsuit and trial was the result of the defendants [Sourinis, et al.] not paying what was due even when they knew Johnson [Paints] would issue the warranty." The court found the equities were with Johnson Paints and adjudged it to be entitled to attorney's fees and costs. Thus, the trial court impliedly determined that Johnson Paints was the prevailing party in the litigation.

Issues on Appeal and Cross Appeal
This appeal by the Sourini parties, Centex Rooney, and their respective sureties *98 ensued. They contend that the trial court erred in entering judgment for Johnson Paints because it first breached the contract. They also challenge the court's finding that Johnson Paints delivered the paint materials and contend that J. Sourini Painting was entitled to a setoff because of defective paint. Finally, they argue that the court erred in failing to grant their motions for attorney's fees. On cross-appeal, Johnson Paints argues that the court erred in finding that it breached its contract and in failing to award it prejudgment interest.

Disposition
A trial court's factual findings and legal conclusions should not be disturbed unless the appellate court is convinced that they are unsupported, inconsistent, or contrary to the law. We are unable to review the issues on this appeal and cross-appeal because the court's final judgment and postjudgment order incorporate inconsistent findings and arrive at conflicting conclusions. The final judgment finds that Johnson Paints breached its contract and that it was not the prevailing party, noting that Johnson Paints caused the litigation. In contrast, the postjudgment order concludes that J. Sourini Painting breached the contract by not making payment to Johnson Paints, found that the equities were with Johnson Paints, and adjudged it to be entitled to attorney's fees and costs, thereby impliedly finding Johnson Paints the prevailing party.
Because of our disposition of this appeal, we refrain from discussing the evidentiary basis for the trial court's contradictory findings and judgments. We note, however, that in ruling on motions for attorney's fees, the court may have applied the former "net judgment" rule receded from in Moritz v. Hoyt Enterprises, Inc., 604 So.2d 807 (Fla.1992). Moritz established the current rule that the prevailing party is the one who prevails on the "significant issues" in the litigation. See also Presperi v. Code, Inc., 626 So.2d 1360 (Fla. 1993) (applying the rule where fees are sought pursuant to section 713.29).
During oral argument on September 19, 2001, we observed that this litigation had become unnecessarily complicated and unduly protracted. The adage that "justice delayed is justice denied" applies to both civil and criminal cases. Litigants, and the public generally, have a right to expect that controversies between parties respecting their rights and liabilities should be expeditiously resolved in our judicial system. Counsel for litigating parties and the judicial system bear a prime responsibility for realizing that objective. Basically, we have here a plaintiff materialman's action for goods sold and delivered against a subcontractor and a contractor and against their sureties on construction payment bonds. The defendants challenged delivery of the materials, alleged breach of contract to furnish a warranty for the project, and challenged the quality of materials furnished. We do not comprehend how the resolution of these issues required nearly four years of litigation before it reached this court; however, the element of attorney's fees might have played some part in prolonging this case.
Over the last thirty years, the legislature has enacted many attorney's fee statutes as a deterrent to avoidable litigation. The reasoning behind these statutes is that plaintiffs will not file lawsuits they are likely to lose and that defendants will quickly settle suits they cannot win. In the context of construction liens, it seems clear that the risk of an award of attorney's fees has generally been a useful deterrent to avoidable litigation. The problem with these statutes, however, is that an unlimited fee statute sometimes causes *99 litigation to reach a point of critical mass where, if the risk of fees has not caused the case to settle, suddenly the fee issue becomes such a major element of the case that it causes the case to become unsettleable. This $80,000 litigation apparently became a fight over fees once the fees reached about $80,000, which was some time ago. More and more, we are seeing cases that are driven not by the amount in controversy, but by the amount of the fees that may be awarded under a statute or an offer of judgment. Both the courts and the legislature ought to consider methods to cap the award of fees at some realistic level. For example, if the awardable fees in a construction lien case could not exceed the amount of the lien or $20,000, whichever was greater, the case before us today would likely have settled years ago.
In sum, because the trial court's findings are contradictory and its legal conclusions inconsistent, we vacate the judgment and the order and remand for a new trial on all issues. The trial court shall have discretion to determine whether to admit, in whole or in part, the record of the trial which culminated in a judgment entered March 9, 2000, and a postjudgment order entered June 8, 2000, and whether, and to what extent, to admit any additional evidence on the issues in this case.
ALTENBERND and WHATLEY, JJ., Concur.